UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**TOMMY LEE CONEY,**

    **Plaintiff,**

**v.**                                                                      **Case No: 8:15-cv-291-T-PRL**

**COMMISSIONER OF SOCIAL SECURITY**

    **Defendant.**

_____

## ORDER

Plaintiff appeals the administrative decision denying his application for Social Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Upon a review of the record (Doc. 15), the memoranda (Doc. 19, 20), and the applicable law, I recommend that the Commissioner's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

    **I.**    **BACKGROUND**

On November 29, 2010, Plaintiff Tommy Lee Coney, filed an application for DIB and an application for SSI alleging a disability onset date of February 22, 2011. (Tr. 30). The Social Security Administration ("SSA") denied his applications initially and upon reconsideration. (Tr. 30). Plaintiff requested a hearing before an Administrative Law Judge and on November 19, 2012, Administrative Law Judge F. H. Ayer (the "ALJ") held a hearing. (Tr. 46–74). Two months later, the ALJ issued an unfavorable decision. (Tr. 27–45).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 22, 2011, which is the alleged onset date. (Tr. 32). At step two, the ALJ determined that Plaintiff had the following severe impairments: lumbar degenerative disc disease,

degenerative joint disease, lumbago, facet arthropathy, and scoliosis; thoracic facet arthropathy; sacroilitis; pelvic joint pain; obesity; and major depressive disorder. (Tr. 32).

At step three, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 33–34). Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) including the ability to occasionally lift and/or carry 20 pounds, to frequently lift and/or carry 10 pounds, to stand and/or walk about 6 hours in an 8-hour workday, and to sit for a total of about 6 hours in an 8-hour workday. However, he can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, and never climb ladders, ropes and scaffolds. He also requires the ability to alternate between sitting and standing every 30 minutes, give or take 10 minutes, and is limited to performing simple 1–4 step, routine, repetitive tasks in a work environment where there would only be occasional contact with co-workers and supervisors and no contact with the general public.

(Tr. 34–35). At step four, the ALJ determined that Plaintiff was unable to perform his past relevant work. (Tr. 38).

At step five, however, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. (Tr. 39–40). Namely, Plaintiff can perform the light-work occupations of small products assembler, polypacker and heat sealer, and injection molding machine tender. (Tr. 39). Thus the ALJ found that Plaintiff was not disabled from February 22, 2011, through the date of the decision. (Tr. 40).

On June 5, 2014, the Appeals Council denied Plaintiff's Request for Review, making the hearing decision the final decision of the Commissioner. (Tr. 12–14). With his administrative remedies exhausted, Plaintiff timely filed the instant appeal. (Doc. 1).

## II.   STANDARD OF REVIEW

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to either result in death or last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision.  *See* 20 CFR §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.  *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).  Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  While the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates

against the Commissioner's decision.  *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).   This is clearly a deferential standard.

### III.  DISCUSSION

Plaintiff raises two arguments on appeal: (1) whether the ALJ improperly considered the medical evidence by failing to articulate good cause for not crediting the opinion of Plaintiff's treating physician Dario F. Cardona, M.D., and (2) whether the ALJ improperly considered the side effects of Plaintiff's medication.

#### A.  The ALJ Properly Considered Dr. Cardona's Opinion

Plaintiff first argues that the ALJ erred by failing to articulate good cause for not crediting the opinion of his treating physician Dr. Cardona.  On November 8, 2012, Dr. Cardona completed a Physical Functional Capacity Assessment Form and assessed limitations beyond those provided for in the RFC.  (Tr. 384–85).  The doctor stated that, due to Plaintiff's central disc protrusions, impingements, and mild grade one bilateral stenosis, Plaintiff could only continuously sit and stand for ten minutes; could only walk continuously for twenty minutes; over the course of an eight-hour day Plaintiff could only sit for one hour, stand for ten minutes, and walk for twenty-five minutes; could never lift over ten pounds; could only occasionally lift less than ten pounds; and could not push or pull with either hand.  (Tr. 384–85).  He also stated that Plaintiff's ability to attend work would be inconsistent and sporadic, Plaintiff's medication side effects caused constant interference with his ability to concentrate, and that his symptoms had remained unchanged despite medication and treatment.

The ALJ must state with particularity the weight given to different medical opinions, including non-examining state agency physicians, and the reasons therefor.  *Winschel v Comm'r of Social Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  The opinions of treating physicians are

entitled to substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F. 3d 1155, 1159 (11th Cir. 2004). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips* v. *Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so. *Id*. at 1240–41. Here, the ALJ articulated good cause for not crediting Dr. Cardona's opinion. (Tr. 37).

As the ALJ noted, Dr. Cardona's own treatment notes belie the limitations he assessed. For example, in December of 2011 and again in April of 2012, Dr. Cardona found that Plaintiff had normal motor function in his bilateral extremities and negative straight leg tests; and examination showed normal sensations, normal reflexes, and symmetric strength. (Tr. 331, 340). Further, throughout the fifteen months that Dr. Cardona treated Plaintiff, he consistently found normal sensations, normal reflexes, and symmetric strength in Plaintiff's extremities. (Tr. 316, 319, 322, 328, 331, 334, 337, 340, 343, 347, 350, 353, 356, 359, 362). And contrary to the assessment that Plaintiff's symptoms had remained unchanged despite medication and treatment, Dr. Cardona's treatment notes repeatedly show that medication decreased Plaintiff's pain.[1] (Tr. 316, 322, 325, 328, 331, 337, 343, 350).

Likewise, Dr. Cardona's treatment notes fail to support his assessment that medication side effects would constantly interfere with Plaintiff's attention and concentration. Over the fifteen-month treatment period, Plaintiff complained of side effects on only two occasions. When

---

[1] Dr. Cardona prescribed the narcotic Tramadol and the muscle relaxant Methocarbamol to treat Plaintiff's lumbago over a fifteen-month treatment period. (Tr. 316, 320, 323, 326, 329, 332, 335, 337–38, 341, 344, 348, 351, 354, 357, 360, 363).

Plaintiff first reported that his pain medication (Tramadol) made him "sleepy" (Tr. 328), Dr. Cardona took no action regarding this report, and when Plaintiff reported that his muscle relaxer (Methocarbamol) also made him "sleepy," Dr. Cardona simply suggested that Plaintiff take this medication at bedtime and lowered the medication dosage (Tr. 316–17).

Moreover, a June 2011 x-ray of Plaintiff's back, which Dr. Cardona ordered (Tr. 362), was unremarkable other than mild disc narrowing and mild degeneration. (Tr. 366). And a September 2011 MRI showed only some disc dehydration and degeneration, small disc protrusions, mild grade one stenosis, and mild scoliosis. (Tr. 364–65). Indeed, the ALJ found that these diagnostic test results do not support the limitations that Dr. Cardona assessed. Further, Plaintiff does not cite to any other medical evidence that the ALJ failed to consider or that supports disabling or additional limitations not accounted for in the RFCs. Thus, the ALJ articulated good cause for not crediting Dr. Cardona's assessment. *Phillips*, 357 F.3d at 1241.

### B. The ALJ Properly Considered Plaintiff's Medication Side Effects

Next, Plaintiff argues that the ALJ failed to assess Plaintiff's alleged medication side effects of drowsiness. When evaluating the intensity and persistence of a claimant's alleged symptoms, the Social Security regulations direct the ALJ to consider the claimant's alleged medication side effects. 20 C.F.R. § 404.1529(c)(3)(iv) (noting that factors relevant to a claimant's alleged symptoms include the "type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms"); 20 C.F.R. § 416.929(c)(3)(iv). "It is conceivable that the side effects of medication could render a claimant disabled or at least contribute to a disability." *Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981); *McDevitt v. Comm'r of Soc. Sec.*, 241 F. App'x 615, 619 (11th Cir. 2007).

In this case, the ALJ specifically noted Plaintiff's claim that his "medication causes sever drowsiness" and found that Plaintiff's statements regarding the limiting effects of his symptoms were not entirely credible.  (Tr. 35).  Thus, under Eleventh Circuit law, the ALJ's credibility finding encompassed Plaintiff's alleged side effects.  *Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, 367 (11th Cir. 2010) (holding that the ALJ's overall credibility finding encompasses the claimant's alleged medication side effects); *Macintosh v. Comm'r of Soc. Sec.*, No. 6:10-CV-1557-ORL-GJK, 2012 WL 868889, at *7–8 (M.D. Fla. Mar. 14, 2012) ("[T]he ALJ's credibility finding encompassed Claimant's testimony concerning her medication side effects."); *French v. Massanari*, 152 F. Supp. 2d 1329, 1338 (M.D. Fla. 2001) ("[I]t is not reversible error that the administrative law judge did not expressly mention the side effects of [the plaintiff's] medications in his credibility determination.").

Moreover, Plaintiff has not met his "burden of introducing evidence supporting a claim that his symptoms, including any medication side effects, render him or her disabled."  *Principe v. Comm'r of Soc. Sec.*, No. 6:13-CV-1853-ORL-GJK, 2015 WL 1345311, at *5 (M.D. Fla. Mar. 23, 2015) (citing *Walker*, 404 F. App'x at 366); *see also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  During the hearing before the ALJ, Plaintiff testified that, between eight a.m. and five p.m. each day, he sleeps four to five hours due to the drowsiness caused by his medication.  (Tr. 51–52).  However, the sole piece of medical evidence Plaintiff cites to support this argument is Dr. Cardona's assessment that medication side effects would constantly interfere with Plaintiff's attention and concentration (Tr. 384–85).  As a threshold matter, this assessment, which consists of only a checked box without any textual explanation or supporting medical evidence, is of limited value.  *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011); *see Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

As noted *supra*, Dr. Cardona's opinion is inconsistent with his own treatment notes. Indeed, in contrast to showing that medication caused disabling side effects, Dr. Cardona's treatment notes *repeatedly* indicate that medication reduced Plaintiff's pain.  (Tr. 316, 322, 325, 328, 331, 334, 337, 343, 350, 359).   Nothing in the treatment notes show that Dr. Cardona was concerned about medication side effects, and Plaintiff never requested that Dr. Cardona alter his medications or treat him for drowsiness.   Instead, Plaintiff consistently took both Tramadol and Methocarbamol for almost the entire fifteen-month treatment period (Tr. 316, 320, 323, 326, 329, 332, 335, 337–38, 341, 344, 348, 351, 354, 357, 360, 363), and on the only two occasions that Plaintiff reported drowsiness to Dr. Cardona, the doctor either took no action or simply advised Plaintiff to take a lower dose of the medication at bedtime.   (Tr. 316–17, 328).   Moreover, the ALJ gave great weight to the opinions of consulting physicians Ken Bauer and John Thibodeau (Tr. 37–38), both of whom stated that Plaintiff had only a moderate limitation in maintaining attention and concentration (and Plaintiff does not challenge these opinions or the weight accorded to them).   (Tr. 299, 301, 303, 314).   Thus, the ALJ properly assessed Plaintiff's medication side effects.   *Walker*, 404 F. App'x at 367; *Macintosh*, 2012 WL 868889 at *7–8; *French*, 152 F. Supp. 2d at 1338.

**IV.   Conclusion**

For the reasons stated above, it is **ORDERED** that the ALJ's decision should be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).   The **Clerk is directed** to enter final judgment for the **Commissioner** and **close the file**.

**DONE** and **ORDERED** in Ocala, Florida on March 21, 2016.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy